·GEORGE R. BELL, SURVIVOR, ETC., RESPONDENT, v. THE LYCOMING FIRE INSURANCE COMPANY, APPELLANT.

*Proofs of loss mailed to company — presumed to have been received — Retention of proofs without objection — As to estoppel of the company by knowledge of its agent — As to party procuring policy being deemed agent of assured.*

·Where proofs of loss, under a policy, are prepared and duly mailed to the company, with the postage prepaid, the presumption is, in the absence of evidence to the contrary, that they were received by the company in due course of mail delivery.

Where proofs of loss are not delivered, until after the expiration of the time limited by the policy therefor, the company does not, by retaining them, without objection, waive the right to insist that the condition of the policy, in regard thereto, was not complied with.

·When evidence fails to show such knowledge in an agent issuing a policy, as to the true state of plaintiff's title, as to estop the company from enforcing a forfeiture, caused by plaintiff's erroneous statement in regard to his title, considered.

·The effect of a clause in a policy, providing that any person, other than the assured, procuring the insurance to be taken, shall be deemed the agent of the assured

and not the agent of the company, as to all transactions relating to the insurance, considered.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

*Edward C. James,* for the appellant.

*Magone & Holbrook,* for the respondent.

BOCKES, J. :

The policy of insurance, on which the action was brought, runs from November 1, 1873, to March 1, 1874, a period of four months. The policy was delivered or took effect on the sixth November, and the fire occurred on the thirteenth, seven days thereafter. Proofs of loss were prepared and mailed to the defendant, with postage prepaid, on the eleventh of January, next following. No evidence was given or offered, showing that they were not received. The presumption is, therefore, that they were received by the company in the due course of mail delivery. The presumption arises from the governmental organization and conduct of the public mail service, rendered efficient through sworn officers and common experience, as to the due transmission and delivery of mail matter. But such delivery of the proofs was not within the time required by the condition inserted in the policy. It is urged that this condition, or provision, was waived by reason of the retention of the proofs, without objection, on that or any other ground. It has been held that the retention of the proofs, without giving any notice of objection to them, when delivered in time, will be deemed to be an acceptance of them as sufficient, both as to form and substance ; and so, too, the company will be estopped from insisting that they were not delivered in time, when the delay has been induced by the conduct of its officers or agents authorized to act in that regard. But it was held in the recent case of *Brink* v. *The H. F. Ins. Co.* (70 N. Y., 593) that, if proofs were not served in time, and the insurer had done nothing to induce the omission, and so the insured had lost all rights under the policy, the fact that there-

after the company refused to pay, without assigning any reason, or only assigning one of many, did not amount to a waiver, and did not estop it from insisting upon any other defences. The rule is stated clearly in *Underwood* v. *The Far. J. S. Ins. Co.* (57 N. Y., 500), that " while the party bound to perform has still time and opportunity for so doing, if something be said or done by the other party by which the former is induced to believe that the condition is waived, or that strict compliance will not be insisted upon, the latter is estopped from claiming non-performance of the condition ; but that an estoppel cannot be founded on facts occurring after forfeiture of the contract because of non-performance." This rule is also distinctly recognized in *Blossom* v. *Ly. F. Ins. Co.* (64 N. Y., 162.)   Now, there was no evidence submitted in this case on which to found either a waiver or an estoppel, as regards the omission to serve the proofs of loss within the time required by the provisions inserted in the policy.   Nothing was said or done by any agent of the company to authorize or induce delay in the delivery of the proof, if, indeed, an agent could have done this, save in accordance with the stipulation in the policy, that nothing less than a distinct specific agreement, clearly expressed, and indorsed on the policy, should be construed as a waiver of any printed or written restriction therein.   Effect was given to this stipulation in the policy according to its terms in *Van Allen* v. *The Far. J. S. Ins. Co.* (64 N. Y., 469) ; and, also, to a similar one in *Walsh* v. *The Hart. Ins. Co.* (73 N. Y., 5).   In the last case cited the waiver was explicitly and purposely given in terms, and by an agent having general powers.   But the court held that the party must be held to his express contract, evidenced by the written stipulation ; adding that " the case seemed to be a hard one for the plaintiff ; but courts cannot make contracts for parties, nor can they dispense with their provisions." (Page 10.)   In the case at bar, however, there is no evidence establishing a waiver of the condition, or of the remotest intention to yield up or surrender any existing objection which the company had the right to urge to defeat the plaintiff's claim.   All that occurred or was said bearing on this point was said and done by Goggin, the local agent, or by Chamberlain, the general agent of the company.   But there was noth-

ing which passed between them, if fully communicated to the plaintiff, intimating a waiver as regarded the duty of the assured to serve the proofs of loss according to the requirements of the policy. Indeed, the interview between these parties was after the time for the delivery of the proofs had expired. It seems (although this fact is not distinctly proved) that the claim had been rejected, for some reason, in whole or in part, or, at least, disputed; whereupon Goggin, after having had an interview with the plaintiff's attorney, applied to Chamberlain for a "rehearing and re-adjustment of the case." On what grounds does not appear, except, perhaps, inferentially from Chamberlain's remarks made to Goggin on receiving the application. He said, if a wrong had been done, the case should be opened, and he would direct a meeting with the claimants under the policy; that he would write Goggin when the meeting could be had, and the latter was to inform the parties. Goggin was written to and gave the parties notice. It does not appear that anything further was done in the matter. It does not appear that any meeting was had or that there was any further attempt made for a rehearing or re-adjustment. Here, certainly, is no evidence of any waiver of the due service of the proofs of loss. It is not seen that they were referred to in the remotest manner. This, too, was after the time within which service should have been made. There was not any proof whatever on which to rest an estoppel against the objection that they were not delivered in time.

We are of the opinion that the learned referee was in error, in holding that the irregularity in the service of the proofs of loss was not available to the defendant as a defence to the action.

Again, the above difficulty does not seem to be the only one in the case.

It was provided in the policy that if the interest of the assured be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured; or if the building insured stand on leased ground, it must be so represented to the company, and so expressed in the written part of the policy; otherwise the policy should be void. The referee found, as the proof showed, a violation of this provision; but he further

held that Goggin, the defendant's agent, had knowledge of the true state of the title at the time he issued the policy, and therefore the defendant was estopped from this defence ; and further, that Goggin's mistake in not inserting the actual state of the title was the mistake of the defendant.

It will be necessary to examine the evidence bearing on this branch of the case somewhat in detail. It appears that Goggin had resided in the vicinity of the insured premises for several years ; that he had been on to the premises and into the building ; that he knew that one Davis had occupied the building principally for some time previously, and still held an occupation at the time the policy was issued. He had before taken an insurance upon the property.

The assured applied to Goggin for an insurance, and, as he testified, told him what he wanted ; told him that he occupied the shops, and Davis also, for making threshing machines ; directed Goggin what to put in the policy ; gave no directions to him what to write ; " meant by my answer that I stated to him that I was using the shop myself, and that Davis was using it for threshing machines ; that as soon as Davis vacated it in thirty or sixty days I should use it myself, or rent it to other parties ; Goggin said in response that I virtually owned and occupied the buildings ; never made any further representations to Goggin on the subject." Goggin testified that Bell applied to him for the insurance — said he had bought the property. " I believe I asked him if he had title to the place, and he said they were making out the papers." Goggin then wrote, in his daily report, a memorandum of an insurance to Bell (after some preliminaries), as follows : " $1,500 on his three-story frame building, and two-story frame addition, known as the Northern Agricultural Works, occupied by him for making agricultural implements, and chains," etc. This he read over to Bell — said he wrote from Bell's statement — did not remember that Bell said Davis occupied a part ; " did not know who occupied, except from Bell." He said Hulburd bought the premises at the foreclosure sale, and that he bought of Hulburd." " My recollection is, that Bell said he was getting title." " Bell never told me he was getting only three-fourths of the title."

It was proved that Davis was in the actual possession of most of the building ; that the title was complicated, and that Bell, the assured, had not the entire title ; but in the best view for him, had actual title to a part, and only an equitable title to the remaining part.

Now, admitting that Goggin's knowledge of the condition of the title was the knowledge of the company, and that the latter would be estopped to the extent of such knowledge from setting up, as a defence, any other or different condition of title from what was entered in the policy, within the doctrine declared in *Van Schoick* v. *Niag. Fire Ins. Co.* (68 N. Y., 434), and kindred cases, does the evidence show that Goggin had knowledge of the true state of the title, and having such knowledge neglected and omitted to make due and proper entry in that regard in the policy. His residence in the vicinity, and acquaintance with the premises, together with what the assured informed him as to the purposes for which they were used, might, and perhaps would, raise a presumption that he knew the facts — the truth — attending their occupation. But this evidence goes but little way towards showing him informed as to the state of the title, and especially is this so, in view of the facts that the title had been frequently changed during preceding years, and had been and still remained very complicated. It does not appear that he ever had any connection with the title himself, or any business relation with others calculated to give him information on the subject. Then, is it shown that he had any information on the subject ? None, save what was communicated to him by the assured at the time he applied for the insurance. Was he then truly and fully informed by the assured as to the state of the title ? Very plainly not so. But before there can be good ground for the application of the doctrine of estoppel to the case, it must be made clearly to appear that Goggin knew the entire truth. It is not enough that he was put on inquiry, even conceding that such is this case. An estoppel, which prevents an assertion of the truth, is not favored in law, and is permitted only to countervail imposition and fraud. For anything appearing to the contrary, Goggin knew only what Bell told him as to the state of the title. Then, did Bell tell him the whole truth ? Did he inform the latter fully in that regard,

to the end that his interest in the property might be correctly inserted in the policy ?    He bound himself to make this representation, conceding Goggin's ignorance of the truth, under an express provision that if he omitted so to do, there should be a forfeiture of the policy. The substance of what Bell told Goggin was this : that Hulburd had purchased the property on a foreclosure sale ; that he had purchased of Hulburd, and that he was getting title ; that "they were making out the papers.".   This was but part of the entire truth ; whereas, he had bound himself (his interest in the property being confessedly other than the entire and conditional ownership) to represent the true state of the title to the company, and have it truly expressed in the written part of the policy, otherwise the policy was to be void.    To this condition he had bound himself, and he shows no right or equity by way of waiver or estoppel entitling him to be relieved from its effect. This being so, we need not inquire whether the evidence admitted by the learned referee upon the question of fraud, and so limited when received, may be used to invalidate the express warranty of title contained in the policy.

There is, however, another point which should, perhaps, receive a few words of comment.

The policy in this case contains what is known as the " agency clause."    It was therein stipulated, in effect, that any person, other than the assured, procuring the insurance to be taken, should be deemed to be the agent of the assured, not the agent of the company, as to all transactions relating to the insurance. If force be given to this provision in the policy, the plaintiff is barred from setting up Goggin's knowledge of the true state of the title (conceding that he possessed it) to defeat the defence of a breach of warranty in that regard.    It is urged by the respondent's counsel that the "agency clause" has no application to a case like this in hand ; or; to put it more directly, that this clause is inoperative and void as regards the case here presented. This position of the learned counsel has vindication under the ruling in *Broadhead* v. *The Ly. Ins. Co.* (14 Hun, 452); and in *Chase* v. *The Peo. F. Ins. Co.* (id., 456); also in *Partridge* v. *The C. Ins. Co.* (17 Hun, 95).    We are also cited to *Sprague* v. *The Hol. Pur. Ins. Co.* (69 N. Y., 128), in support of this ruling.

The question, however, was not in the *Sprague Case*. It was determined there that there was no warranty, and, consequently, no breach. The three cases in Hun, above cited, seem to be in direct conflict with *Alexander* v. *Germania Ins. Co.* (66 N. Y., 464); and with *Rohrbach* v. *Germania Ins. Co.* (62 id., 47), where it was expressly decided (in the latter, all the judges concurring, and in the former all concurring who took part in the decision) that this clause was operative, and precluded the assured from claiming, in a case like this, that the company was bound by the knowledge of its agent, through whom the policy was procured.

The three cases in this count were put upon the ground that the decision, in the more recent case of *Van Schoick* v. *The Niag. Fire Ins. Co.* (168 N. Y., 434), overruled *Rohrbach's Case*, and *Alexander's Case*, above cited. This, however, is a mistake. The "agency clause" was not in *Van Schoick's Case;* and this fact is noted as a distinguishing feature by Judge FOLGER, in his opinion, in the latter case. (Pages 441–442.) But then comes *Whited* v. *Germania Ins. Co.*, also in the Court of Appeals (cited in 19 Alb. Law Jour., 396), not yet reported in the regular series of reports, the decision in which, if there correctly rendered, sustains the three decisions of this court in Hun. It is there said of *Rohrbach's Case*, and *Alexander's Case*, "*distinguished and limited.*" We can hardly be expected to know what the law is, on the subject under consideration, until we have the full text of the decision in *Whited's Case;* and even then, as it now seems, there must remain a sharp conflict in the reported cases. If, however, the conclusions above reached on other questions, in this case, are sound, we need not here trouble ourselves with this.

Judgment reversed, new trial granted, costs to abide the event, and reference discharged.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment reversed, new trial granted, reference discharged, costs to abide event.